UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAULA DUPONT RODRIGUEZ,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>SMTC MANUFACTURING<br>CORPORATION OF CALIFORNIA, et al.,<br><br>　　　　　Defendants. | Case No. 24-cv-07398-JST<br><br>**ORDER HOLDING IN ABYANCE DEFENDANTS' MOTION TO COMPEL ARBITRATION; ORDER TO MEET AND CONFER RE: CASE SCHEDULE**<br><br>Re: ECF No. 14 |

Before the Court is Defendants SMTC Corporation's and SMTC Manufacturing Corporation of California's ("SMTC Manufacturing") (together, the "SMTC Defendants") motion to compel arbitration of Plaintiff Paula Dupont Rodriguez's individual claims, dismiss Rodriguez's individual and class claims, and stay Rodriguez's PAGA claims on behalf of others. ECF No. 14. The Court concludes that a trial is necessary regarding the formation of an arbitration agreement and will direct the parties to meet and confer regarding an appropriate case schedule.

I.    **BACKGROUND**

　A.    **Procedural History**

On August 29, 2023, Plaintiff Paula Dupont Rodriguez brought suit against SMTC Manufacturing, CheckOne, Inc., and 40 HRS, Inc. in Alameda Superior Court for alleged: (1) failure to pay all wages, including minimum and overtime wages; (2) failure to provide proper meal periods; (3) failure to provide proper rest periods; (4) failure to reimburse necessary business expenses; (5) failure to provide accurate itemized wage statements; (6) failure to pay timely final wages; and (7) violations of California's Unfair Competition Law, California Business and Professions Code § 17200 *et seq*. *See generally* ECF No. 1-1. On December 29, 2023, Rodriguez

1  amended her complaint to add a cause of action under the Private Attorneys General Act of 2004

2  ("PAGA"). *See* ECF No. 1-8. On October 17, 2024, Rodriguez filed an amendment to her

3  complaint to add SMTC Corporation as a defendant. *See* ECF No. 1-19.

4      SMTC Corporation then filed a notice of removal of the case to this Court, invoking

5  subject matter jurisdiction under the Class Action Fairness Act of 2005 ("CAFA"), 28

6  U.S.C. § 1332(d). *See* ECF No. 1. On November 25, 2024, the SMTC Defendants filed the

7  motion to compel arbitration currently before the Court, ECF No. 14, and joined by Defendants

8  CheckOne, Inc. and 40 HRS, Inc., ECF No. 15.

9      **B.**    **Competing Declarations**

10     Ruby Brenda Torres-Mahajan, the production supervisor in the mechanical assembly

11 department of SMTC Corporation where Rodriguez worked, provided a declaration in support of

12 the SMTC Defendants' motion to compel arbitration. ECF No. 14-3. She states, in relevant part,

13 that:

> 3. On January 16, 2023, I distributed SMTC Corporation's Arbitration Agreement to the entire production floor, including Plaintiff. I gave each worker a physical copy to read, sign, and return.
>
> 4. I am a Spanish speaker, as is Plaintiff. On January 16, 2023, when I presented the Arbitration Agreement to Plaintiff, she asked me to explain it to her in Spanish, and I did so. I told Plaintiff that even if she did not sign the Arbitration Agreement, her continued work for SMTC would constitute acceptance of the Agreement. I showed her that specific provision of the Agreement. Plaintiff did not immediately sign the Arbitration Agreement. She said she wanted to take more time to read the Arbitration Agreement first. I told her that was fine.
>
> 5. On January 18, 2023, I followed up with Plaintiff regarding the Arbitration Agreement. Again, we discussed the Arbitration Agreement in Spanish. I reminded Plaintiff that even if she did not sign the Arbitration Agreement, her continued work for SMTC would constitute acceptance of the Agreement. Plaintiff still did not sign the Arbitration Agreement.
>
> 6. On January 24, 2023, I spoke with Plaintiff to ask for the signed Arbitration again with Plaintiff, and I again told her that continued work for SMTC would constitute acceptance of the Agreement. Again, we discussed the Arbitration Agreement in Spanish. Plaintiff did not sign the Arbitration Agreement on that occasion either.

> 7. Plaintiff continued to work for SMTC Corporation even after I provided her with a copy of the Arbitration Agreement and explained that her continued work for SMTC constituted acceptance of the Arbitration Agreement.

*Id.* ¶¶ 3–7. The SMTC Defendants have also included a copy of the arbitration agreement, which provides, in relevant part, that, "any claim, cause of action, complaint or dispute that cannot be resolved informally between the Parties that relates in any way to any aspect of the Parties' employment relationship whether based in contract, tort, statute, fraud, misrepresentation or any other legal theory . . . shall be submitted to binding arbitration[.]" ECF No. 14-4 at 5. The penultimate paragraph of the arbitration agreement states: "By signing this Agreement or continuing employment with the Company after receiving this Agreement, Employee acknowledges that Employee has read this Agreement, understands its terms, and agree that all understandings and agreements between Employee and the Company relating to the subjects covered in the Agreement are contained in it. . . ." *Id.* at 8.

In her opposition to the SMTC Defendants' motion to compel arbitration, Rodriguez has submitted her own declaration. ECF No. 17-2.[1] She states, in relevant part, that:

> 5. RUBY BREANDA TORRES- MAHAJAN ("MAJAJAN") did not provide me with ANY arbitration agreement. She only

---

[1] Rodriguez states that she "only read[s] and write[s] [Spanish], and do[es] not read or write English." *See* ECF No. 17-2 at 4. In his attorney declaration, Rodriguez's counsel states: "I assisted Plaintiff Paula Dupont Rodriguez in preparing her declaration in support of the opposition to arbitrate. I am not a certified translator; however, I speak, read, and write fluent Spanish, and in the normal course of business translate documents requiring translation from English to Spanish." ECF No. 17-1 ¶ 6. Rodriguez has submitted the original Spanish version of the declaration that she reviewed and signed. ECF No. 17-1, Ex. 1.

The SMTC Defendants argue that Rodriguez's declaration was not properly authenticated because it was translated by Rodriguez's counsel, Mr. Jose Garay, rather than a certified translator and that the declaration is thus inadmissible. *See* ECF No. 19 at 8–9. Although Mr. Garay is not a certified translator, he has submitted a sworn declaration that he is fluent in Spanish and regularly translates documents from English to Spanish in the normal court of business. Other district courts have found that this suffices for Mr. Garay to be a qualified interpreter under Rule 604. *See Romero v. RBS Constr. Corp.*, No. CV 18-00179 (EGS), 2022 WL 522989, at *8 (D.D.C. Feb. 22, 2022). Moreover, Rodriguez has submitted the original declaration in Spanish that she personally reviewed, and the SMTC Defendants have not alleged that that declaration has been mis-translated. *Cf. The Sunrider Corp. v. Bountiful Biotech Corp.*, No. SACV 08-1339, 2010 WL 4590766, at *16 (C.D. Cal. Oct. 8, 2010), *report and recommendation adopted*, No. SACV 08-1339, 2010 WL 4589156 (C.D. Cal. Nov. 3, 2010) (holding that the English-language translation of a witness's testimony lacked foundation in part because there was "no Chinese-language version of her declaration in the record which [the opposing party] could read or translate into English if they wished to test the accuracy of [the] declaration in English"). The Court will thus

> distributed a signature page without any reference or mention of an arbitration agreement. It is my understanding that the arbitration agreement is 5 pages. First, she demonstrated to me a 1 page document. . . .
>
> 6. On January 18, 2023, RUBY BREANDA TORRES- MAHAJAN stated that she followed up with me regarding the one-page document. I requested that she provide a copy as follows: 1) a Spanish version, and 2) a copy so I could read and seek advice on. She claimed that she reminded me that even if I did not sign the one-page document it would apply to me. I informed her that it is my custom and practice to: 1) understand what I am signing, 2) request a copy of the document (the 1-page document in this case), 3) to seek legal counsel as to the meaning of the document, 4) to confirm with legal counsel if the document is a legally binding document, and 5) obtain a Spanish version of the document. In response to my multiple requests she stated that it was company and human resources policy not to provide a copy or a translated copy. Defendant through Ruby denied all my requests and failed to notify me that SMTC had an arbitration agreement. Instead, she told me to sign the document, stating that it was for my benefit but never explained how the 1 page documented benefitted me.
>
> 7. On January 24, 2023, Ruby states falsely: "I spoke with Plaintiff to ask for the signed Arbitration Agreement again, and I told her once more that continued work for SMTC would constitute acceptance of the Agreement." I was never informed about the consequences of not signing the 1-page document and I again repeated my requests as declared in paragraph 5. She again refused my requests.
>
> 8. On January 24, 2023, RUBY BREANDA TORRES- MAHAJAN cornered me and other employees on the floor. I felt intimidated. She told me that if I did not sign the 1-page document that my name would be added to a list of employees who hadn't signed the 1-page document. After I refused to sign, she wrote my name on a document. As she wrote my name, I saw two names of employees who had not signed I was simply told to sign it without a clear explanation.
>
> 9. As of today, I have not been providing a copy of the 1-page document. As of today, I am not aware that any of the defendants had an arbitration agreement. her statement. [sic]
>
> . . .
>
> 13. In addition, I asked RUBY BREANDA TORRES- MAHAJAN if there was a consequence for not signing, she responded "no."

*Id.* ¶¶ 5–9, 13.

---

consider the English-language translation of Rodriguez's declaration for the purposes of this order.

4

## II. JURISDICTION

The Court has jurisdiction under 28 U.S.C. § 1332(d).

## III. LEGAL STANDARD

The Federal Arbitration Act ("FAA") applies to written contracts "evidencing a transaction involving commerce." 9 U.S.C. § 2. Under the FAA, arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. This provision reflects "both a liberal federal policy favoring arbitration, and the fundamental principle that arbitration is a matter of contract." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (quotation marks and citations omitted).

On a motion to compel arbitration, the Court's role under the FAA is "limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000) (citing 9 U.S.C. § 4). If the Court is "satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the [C]ourt shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4. If, however, "the making of the arbitration agreement" is "in issue, the court shall proceed summarily to the trial thereof." *Id.* Until a trial on arbitrability is held, "any motion to compel arbitration" must be held "in abeyance until the factual issues have been resolved." *Hansen v. LMB Mortg. Servs., Inc.*, 1 F.4th 667, 672 (9th Cir. 2021).

On a motion to compel arbitration, "courts rely on the summary judgment standard of Rule 56 of the Federal Rules of Civil Procedure." *Id.* at 670. "Courts may consider evidence outside of the pleadings, such as declarations and other documents filed with the court." *Burger v. Northrop Grumman Sys. Corp.*, No. 21-cv-06761-ABM-RWX, 2021 WL 8322270, at *4 (C.D. Cal. Oct. 27, 2021). Under Rule 56, "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). The Court must "give to the opposing party the benefit of all reasonable doubts and inferences that may arise." *Concat LP v. Unilever, PLC*, 350 F. Supp. 2d 796, 804 (N.D. Cal. 2004) (citations

1  omitted). If the parties contest the existence of an arbitration agreement, courts "generally . . .
2  apply state-law principles of contract interpretation to decide whether a contractual obligation to
3  arbitrate exists." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).
4        Under California law, contract formation requires mutual assent. *See Binder v. Aetna Life*
5  *Ins. Co.*, 75 Cal. App. 4th 832, 850 (1999); *Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 565
6  (9th Cir. 2014) (holding that mutual assent is "a required element of contract formation.").
7  "Mutual assent may be manifested by written or spoken words, or by conduct . . . and acceptance
8  of contract terms may be implied through action or inaction." *Knutson*, 771 F.3d at 565 (internal
9  quotations and citations omitted). "Accordingly, an offeree, knowing that an offer has been made
10 to him but not knowing all of its terms, may be held to have accepted by his conduct, whatever
11 terms the offer contains." *Windsor Mills, Inc. v. Collins & Aikman Corp.*, 25 Cal. App. 3d 987,
12 992–93 (1972) (citations omitted). "However, when the offeree does not know that a proposal has
13 been made"—such as when "inconspicuous contractual provisions" are "contained in a document
14 whose contractual nature is not obvious"—"this objective standard does not apply." *Id.* (citations
15 omitted).

## IV.    DISCUSSION

17       The SMTC Defendants argue that Rodriguez impliedly agreed to arbitrate this dispute
18 when SMTC Corporation—through Torres-Mahajan—provided her with notice of the arbitration
19 agreement, and Rodriguez continued to provide services to SMTC Corporation. ECF No. 14 at
20 12–13 (citing ECF No. 14-3 ¶¶ 3–7). Rodriguez contends that she never agreed to the arbitration
21 agreement because she was never provided with the arbitration agreement now submitted to the
22 Court. ECF No. 20 at 20–21. Instead, she was only ever shown—but not given—a one-page
23 document that appeared to be a signature page. *Id.* (citing ECF No. 17-2 ¶ 6). Her requests to be
24 provided a Spanish copy of the document so that she could seek legal advice were denied by
25 Torres-Mahajan. *Id.*
26       The Court begins with California law regarding contract formation. *See In re Holl*, 925
27 F.3d 1076, 1083 (9th Cir. 2019) (noting that courts apply state law principles of contract formation
28 and interpretation when determining if the parties entered into a binding arbitration agreement).

The existence of a contract under California law requires four essential elements: (1) parties capable of contracting; (2) their consent; (3) a lawful object; and (4) a sufficient cause or consideration. Cal. Civ. Code. § 1550.

The crux of this dispute is the element of consent. Under California law, the consent of parties to a contract must be free, mutual, and communicated to one another. Cal. Civ. Code. § 1565; *see also* Cal. Civ. Code, § 1580 ("Consent is not mutual, unless the parties all agree upon the same thing in the same sense."). Here, the parties dispute whether Rodriguez was ever presented with the full arbitration agreement such that her continued employment could serve as assent to be bound by the agreement. It is the SMTC Defendants' burden to prove that Rodriguez was actually provided with a copy of the arbitration agreement. *See Chambers v. Crown Asset Mgmt., LLC*, 71 Cal. App. 5th 583, 602 (2021) (holding that "[w]ithout a predicate showing" that the plaintiff was mailed a copy of the arbitration agreement, the plaintiff's consent could not be established); *Fleming v. Oliphant Fin., LLC*, 88 Cal. App. 5th 13, 23 (2023) (upholding trial court's decision to deny arbitration, as defendant "[did] not explain how Plaintiff could have consented to any agreement that he was not provided.").

The only evidence that the SMTC Defendants provide is a declaration from Torres-Mahajan, the production supervisor in the department where Rodriguez worked, stating that on January 16, 2023, Torres-Mahajan distributed a physical copy of the arbitration agreement "to the entire production floor, including Plaintiff" for each worker to "read, sign, and return." ECF No. 14-3 ¶ 3. Torres-Mahajan further declares that she explained the arbitration agreement to Rodriguez in Spanish, including explaining that even if Rodriguez did not sign the agreement, her continued work for SMTC would constitute acceptance. *Id.* ¶¶ 4–6. As explained above, however, Rodriguez disputes this version of events and declares that she was only ever presented with a one-page document, rather than given a five-page arbitration agreement. *See* ECF No. 17-2 ¶ 6.

As in summary judgment, the Court must draw all reasonable inferences in Rodriguez's favor and avoid making credibility determinations when weighing her evidence against the SMTC Defendants'. Because the parties present conflicting facts as to the issue of consent, and the

1  SMTC Defendants have not provided any evidence beyond their witness declaration that
2  Rodriguez in fact received a copy of the arbitration agreement, a trial is necessary for the Court to
3  make a factual finding.  *See Hall-Johnson v. Citibank, N.A.*, No. 23-CV-05378-JST, 2024 WL
4  1590645, at *3 (N.D. Cal. Mar. 11, 2024) (defendant's manager's declaration that bank customers
5  must sign arbitration agreement to open account not sufficient to establish consent to such
6  agreement); *see also Hansen*, 1 F.4th at 672.  Because the SMTC Defendants have not carried
7  their burden as to the initial question of contract formation, the Court does not reach any
8  subsequent questions, such as whether the SMTC Defendants waived their right to compel
9  arbitration or whether the arbitration agreement is enforceable.

## CONCLUSION

For the reasons set forth above, the Court holds in abeyance Defendants' motion to compel arbitration.  The parties shall meet and confer and, within 21 days of the date of this order, file a joint case management statement proposing a case schedule for resolving the disputed facts over whether an agreement to arbitrate was formed.  This statement should include whether a translator is necessary for the bench trial and, if so, jointly propose a translator.  If the parties cannot agree on a schedule or translator, the Court will likely choose, in all respects, the single proposal it concludes is most reasonable.[2]

**IT IS SO ORDERED.**

Dated:  May 9, 2025

JON S. TIGAR
United States District Judge

---

[2] *See* Michael Carrell & Richard Bales, *Considering Final Offer Arbitration to Resolve Public Sector Impasses in Times of Concession Bargaining*, 28 Ohio St. J. on Disp. Resol. 1, 20 (2013) ("In baseball arbitration ... the parties ... have every incentive to make a reasonable proposal to the arbitrator because the arbitrator will choose the more reasonable offer.").

8